IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v. Criminal No. 3:26-cr-54

MALIK DEONTAE MANGUM,
Defendant.

**MEMORANDUM OPINION**

This matter comes before the Court on MR. MANGUM'S MOTION TO SUPPRESS AND MEMORANDUM IN SUPPORT (the "Motion to Suppress") (ECF No. 13). For the reasons set forth below, the Motion to Suppress will be denied by forthcoming order.

## I. BACKGROUND

### A. Procedural Background

On May 19, 2026, Malik Deontae Mangum ("Mangum") was charged in a one-count INDICTMENT (ECF No. 1) with Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). The Indictment alleges that, "[o]n or about January 22, 2026, in the Eastern District of Virginia, the defendant, MALIK DEONTAE MANGUM, knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm, to wit: a Glock 22, 40 Caliber, Semi-Automatic Pistol, bearing serial number BXSC906, in and affecting interstate and foreign commerce." ECF No. 1 at 1.

On June 22, 2026, Mangum filed the Motion to Suppress, seeking "to suppress all evidence seized from the execution of two State of Virginia search warrants on the Instagram account 'bleedem.tg4x,' issued on January 9, 2026, as well as evidence seized as a result of the execution of a State of Virginia search warrant issued for the XXXX Lakeview Avenue [address], issued on January 21, 2026." ECF No. 13 at 1. Mangum argues that "[t]hese warrants were issued in violation of [his] Fourth Amendment rights, and the warrant clause of the United States Constitution." ECF No. 13 at 1. On July 7, 2026, the Government filed the GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPRESS [SIC] (ECF No. 14). On July 12, 2026, Mangum filed MR. MANGUM'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS MOTION TO SUPPRESS (ECF No. 15). On August 10, 2026, the parties filed their JOINT STIPULATIONS FOR MOTION TO SUPPRESS (ECF No. 20). On August 12, 2026, the Court heard argument on the Motion to Suppress.

**B. Factual Background**

On November 15, 2025, an Instagram account with the username "bleedem.tg4x" reached out via direct message to an Instagram account operated by Richmond Police Department Detective Allison Jecklin. ECF No. 13-1 at 6. At the time, the user of the bleedem.tg4x account did not know that the receiving account was being operated by the police. ECF No. 13-1 at 6. The bleedem.tg4x account user sent a direct message to Detective Jecklin that

included a phone number that Detective Jecklin found was registered to one of Mangum's relatives. ECF No. 13-1 at 6. Additionally, the bleedem.tg4x account often posted pictures of Mangum. ECF No. 13-1 at 6.

Between November 2025 and January 2026, Detective Jecklin communicated with the bleedem.tg4x account through direct message and monitored the posts and stories on the bleedem.tg4x account. ECF No. 14 at 2. Through her monitoring of the bleedem.tg4x account, Detective Jecklin observed that three pictures of firearms had been posted to the account—two on December 31, 2025, and one on January 8, 2026. ECF No. 13 at 2. The three pictures portraying firearms were all posted on the bleedem.tg4x account using the Instagram "story" feature. ECF Nos. 13 at 2; 20 at ¶ 18.

The picture posted on December 31, 2025, at 9:58 P.M., depicted an unidentified individual sitting in a vehicle with a firearm laying in the individual's lap. ECF No. 13-1 at 6. The other picture posted on December 31, 2025, depicted a firearm alongside a few hundred dollars that had been laid out on hardwood floor. ECF No. 13-1 at 7. Part of a white shoe is visible in the picture next to the firearm and the money. ECF No. 13-1 at 7. Additionally, the post included the caption, "My Backdoor Open Get Yo Shit Bust . . . ." ECF No. 13-1 at 7. The third picture, posted

on January 8, 2026, depicted the rear back plate of a firearm. ECF Nos. 13 at 2; 13-1 at 7-8.[1]

Based on her (1) observations of the three referenced "story" posts on the bleedem.tg4x account, (2) belief that the bleedem.tg4x account was being operated by Mangum, and (3) knowledge that Mangum was a previously convicted felon; Detective Jecklin sought two search warrants from Instagram's parent company, Meta Platforms, Inc. See generally ECF Nos. 13-1; 13-2.

***1. Search Warrant Seeking Electronic Data Associated with the "bleedem.tg4x" Instagram Account ("Search Warrant A")***

On January 9, 2026, Detective Jecklin sought and obtained a search warrant from the Honorable C.N. Jenkins, Jr., Richmond Circuit Court Judge, authorizing Detective Jecklin to search for and seize from Instagram historical records both the active content and latent data (deleted information) associated with the bleedem.tg4x account from December 31, 2025 to January 8, 2026 (hereinafter, "Search Warrant A"). ECF No. 13-1 at 2, 4. Specifically, Search Warrant A sought:

> all contact and personal identifying information associated with the bleedem.tg4x account; any additional information tending to identify the person in control of the bleedem.tg4x account; additional Instagram accounts registered to the email address and/or phone number

[1] In her affidavits in support of Search Warrants A, B, and C (discussed below); Detective Jecklin noted that the backplate had been changed out and that there may have been a machine gun conversion device on the firearm depicted in the third post. See ECF Nos. 13-1 at 7-8; 13-2 at 7-8; 13-3 at 6-7.

> utilized to establish the bleedem.tg4x account; all accounts associated by device or cookie; all devices used and otherwise associated with the bleedem.tg4x account; all activity logs for the bleedem.tg4x account, and all other documents showing the user's posts and other Instagram activities; all pictures and videos uploaded by the bleedem.tg4x account user, all pictures and videos uploaded by any other user that tagged the bleedem.tg4x account, any associated metadata, and any sources of Global Positioning System coordinates for where any uploaded pictures or videos were taken; all "check ins" and any other location information, including location history data; all future and past "events" the bleedem.tg4x account user responded to; all IP logs and associated port IDs; and all records of the bleedem.tg4x account's usage of the "share" feature.

ECF No. 13-1 at 4.

Search Warrant A was supported by a 9-page affidavit in which Detective Jecklin explained her background, training, experience, Instagram and technology relevant to the warrant,[2] and her knowledge of individuals who illegally possess firearms. ECF No. 13-1 at 9. The affidavit also contained information about past use of the bleedem.tg4x account, including the three pictures portraying firearms described above, that were posted on the bleedem.tg4x account via the Instagram "story" feature. ECF Nos. 13 at 2; 13-1 at 6-8.

---

[2] The Court notes that the information provided in Search Warrant A (as well as Search Warrants B and C, discussed below) regarding Instagram and technology relevant to the warrant is limited and fails to provide the background information that would be necessary to understand what, if anything, may be reasonably inferred from a review of the three pictures attached in support of Search Warrant A. See ECF No. 13-1 at 9.

In her affidavit, Detective Jecklin stated that she believed the bleedem.tg4x account was being operated by Mangum. ECF No. 13-1 at 6. Detective Jecklin also stated that she knew that Mangum was a convicted felon; that Mangum was known to carry a firearm; and that Mangum's possession of a firearm would be in violation of Virginia Code § 18.2-308.2, which makes it unlawful for any person who has been convicted of a felony to possess any firearm. ECF No. 13-1 at 6-8. Accordingly, Detective Jecklin set forth her belief that Search Warrant A would provide her with additional evidence of a violation of Virginia Code § 18.2-308.2. ECF No. 13-1 at 8.

***2. Search Warrant Seeking Real-Time Location Data Associated with the "bleedem.tg4x" Instagram Account ("Search Warrant B")***

On January 9, 2026, Detective Jecklin also sought and obtained a search warrant from the Honorable C.N. Jenkins, Jr., Richmond Circuit Court Judge, authorizing Detective Jecklin to search for and seize real-time location data records, held by Meta Platforms, Inc., related to the bleedem.tg4x account for 30 days (hereinafter, "Search Warrant B"). ECF No. 13-2 at 4.

Search Warrant B was supported by a 7-page affidavit in which Detective Jecklin explained her background, training, experience, Instagram and technology relevant to the warrant, and her knowledge of individuals who illegally possess firearms. ECF No. 13-2 at 9. The affidavit also contained information about past use of the bleedem.tg4x account, including the three pictures portraying

firearms described above, that were posted on the bleedem.tg4x account via the Instagram "story" feature. ECF Nos. 13 at 2; 13-2 at 6-8.

In the affidavit, Detective Jecklin stated that she believed the bleedem.tg4x account was being operated by Mangum. ECF No. 13-2 at 6. Detective Jecklin also stated that she knew that Mangum was a convicted felon; that Mangum was known to carry a firearm; and that Mangum's possession of a firearm would be in violation of Virginia Code § 18.2-308.2, which makes it unlawful for any person who has been convicted of a felony to possess any firearm. ECF No. 13-2 at 6-8. Detective Jecklin also put forth in the affidavit that (1) she knew that individuals who are prohibited from possessing firearms often store them in their residences, (2) she believed firearms may be stored in the residence of the individual operating the bleedem.tg4x account, and (3) she believed that the Instagram real-time location data associated with the bleedem.tg4x account would allow her to obtain Mangum's address. ECF No. 13-2 at 8.

***3. Search Warrant for The Lakeview Avenue Address ("Search Warrant C")***

On January 21, 2026, Detective Jecklin sought and obtained a search warrant from the Honorable Jaqueline S. McClenney, Chief Judge of the Richmond Circuit Court, authorizing Detective Jecklin to search for and seize firearms; firearm parts; firearm tools;

ammunition; electronic devices; identifying documents; and Malik Mangum, who was actively wanted at the time (hereinafter, "Search Warrant C"). ECF No. 13-3 at 3. Detective Jecklin was granted the search warrant related to her investigation of Mangum for his alleged violations of Virginia Code § 18.2-308.2 (Possession of a Firearm by a Convicted Felon) and Virginia Code § 18.2-56 (Assault and Battery). ECF No. 13-3 at 3.

Search Warrant C was supported by a 9-page affidavit in which Detective Jecklin provided much of the same background information included in the affidavits for Search Warrants A and B as well as new information she had obtained from the execution of Search Warrants A and B and her continued investigation into Mangum. ECF No. 13-3 at 3-11. Utilizing the real-time location data pings associated with the bleedem.tg4x account, made available to her through the return from Search Warrant B, Detective Jecklin observed several pings at the Lakeview Avenue address early in the morning and late at night. ECF No. 13-3 at 7-8. Additionally, on January 16, 2026, Detective Jecklin observed a picture posted to the bleedem.tg4x account depicting the Lakeview Avenue address as associated with the "Home" icon on the car's GPS screen. ECF No. 13-3 at 7-8. Detective Jecklin further stated that she knew that Mangum's child's mother lived at the Lakeview Avenue address. ECF No. 13-3 at 8. On January 21, 2026, Detective Jecklin conducted in-person surveillance at the Lakeview Avenue address and, at 8:45

A.M., observed Mangum exiting the Lakeview Avenue residence and entering a vehicle that appeared to be an Uber before the vehicle drove away from the Lakeview Avenue address. ECF No. 13-3 at 9. Detective Jecklin was able to observe the real-time location pings obtained from Instagram, which updated the location after Mangum left the Lakeview Avenue residence. ECF No. 13-3 at 9. Relying on the information above, as set forth in the affidavit in support of Search Warrant C, Detective Jecklin stated her belief that the Lakeview Avenue address was Mangum's residence and that Mangum stayed there at night. ECF No. 13-3 at 8.

In further support of Search Warrant C, Detective Jecklin stated in her affidavit that Search Warrant A returned an email address registered to the bleedem.tg4x account, which Detective Jecklin believed to belong to Mangum, and a date of birth associated with the bleedem.tg4x account that matched Mangum's date of birth. ECF No. 13-3 at 9. Additionally, Detective Jecklin reviewed messages sent to and received by the bleedem.tg4x account. ECF No. 13-3 at 9. Specifically, on January 2, 2026, the operator of the bleedem.tg4x account, whom Detective Jecklin believed to be Mangum, sent multiple chat messages to three different Instagram accounts in an attempt to advertise and sell a rifle. ECF No. 13-3 at 9. The operator also sent each account a picture of said rifle. ECF No. 13-3 at 9.

In her affidavit, Detective Jecklin stated that she knew that people buying and selling illegal firearms often store the firearms at their residences. ECF No. 13-3 at 10. Detective Jecklin also stated that she knew Mangum was known to carry a firearm and had posted pictures of firearms to Instagram. ECF No. 13-3 at 10. Further, Detective Jecklin asserted that she knew that Mangum stayed at the Lakeview Avenue address. ECF No. 13-3 at 10. In turn, Detective Jecklin stated in the affidavit that a residential search warrant for the Lakeview Avenue address would provide her with additional evidence of a violation of Virginia Code § 18.2-308.2 (Possession of a Firearm by a Convicted Felon) because Detective Jecklin believed that Mangum was storing firearms at the Lakeview Avenue address. ECF No. 13-3 at 10.

Search Warrant C was executed on January 22, 2026. ECF No. 13 at 9. As a result of Search Warrant C, the Richmond Police seized one firearm, ammunition, a firearm holster, and two magazines for a rifle and a pistol. ECF No. 13 at 9-10. Mangum was arrested at the residence during the execution of the search warrant at the Lakeview Avenue residence. ECF No. 13 at 10.

## II. LEGAL STANDARD

The Fourth Amendment protects "persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. CONST. amend. IV. Therefore, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly

describing the place to be searched, and the persons or things to be seized." Id. This amounts to a default rule that "law enforcement must obtain a warrant, grounded in probable cause, before seizing or searching . . . ." United States v. Harris, No. 3:21-cr-18, 2021 WL 2384554, at *3 (E.D. Va. June 10, 2021) (citing United States v. Yengel, 711 F.3d 392, 396 (4th Cir. 2013)); see United States v. Blakeney, 949 F.3d 851, 859 (4th Cir. 2020).

"Whether probable cause for a search exists is a 'practical, common-sense' question, asking whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). Probable cause is a "fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." Gates, 462 U.S. at 232.

Recognizing that "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause," the Supreme Court has "concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." United States v. Leon, 468 U.S. 897, 914 (1984) (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969), abrogated by Illinois v. Gates, 462 U.S. 213 (1983)). "But this does not mean that warrants based on conclusory allegations should be upheld: '[s]ufficient information

must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.'" United States v. Wilhelm, 80 F.3d 116, 119 (4th Cir. 1996) (quoting Gates, 462 U.S. at 239).

In turn, courts must "conscientiously review the sufficiency of affidavits on which warrants are issued." Gates, 462 U.S. at 239. When a defendant challenges the issuing judge's probable cause determination, "the court does not assess probable cause de novo but instead determines whether the issuing judge had a 'substantial basis' for finding probable cause." United States v. Griffin, No. 22-4257, 2026 WL 2357208, at *4 (4th Cir. Aug. 14, 2026) (quoting United States v. Lyles, 910 F.3d 787, 791 (4th Cir. 2018)).

When the Fourth Amendment is violated, evidence obtained as a result of the violation may be found to be inadmissible under the exclusionary rule, "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect . . . ." United States v. Calandra, 414 U.S. 338, 348 (1974); see also Mapp v. Ohio, 367 U.S. 643, 654-55 (1961) (extending the Fourth Amendment and the exclusionary rule to the states through the Fourteenth Amendment).

## III. ANALYSIS

### A. Probable Cause – Search Warrants A and B

Having considered the affidavits submitted in support of Search Warrants A and B, as well as the arguments raised by both

parties, the Court finds that, as to both Search Warrants A and B, there was not a substantial basis for finding probable cause that a search of the electronic data and real-time location data associated with the bleedem.tg4x Instagram account would uncover evidence that Mangum was a felon in unlawful possession of a firearm, in violation of Virginia Code § 18.2-308.2.

The affidavits in support of Search Warrants A and B heavily relied upon the three pictures portraying firearms that had been posted on the bleedem.tg4x account via the Instagram "story" feature. ECF Nos. 13 at 2; 20 at ¶ 18. But the affidavits did not establish a sufficient nexus between Mangum, the posted pictures, and the alleged offense. First, there was no direct evidence as to when the pictures comprising the two posts on December 31, 2025, and the one post on January 8, 2026, were created. ECF No. 20 at ¶ 20. Second, there was no information as to who took the pictures in these three posts. ECF No. 20 at ¶ 20. Third, there was no direct evidence as to who posted the pictures to the bleedem.tg4x account. ECF No. 20 at ¶ 20.

Nor do the pictures themselves supply the missing nexus. Beyond the fact that the pictures had been posted to an Instagram account that Detective Jecklin believed was operated by Mangum, there is nothing depicted in the three posts themselves that connects Mangum to the firearms shown in the pictures. See ECF Nos. 13-4; 13-5; 13-6. The pictures alone do not establish—and the

affidavits in support of Search Warrants A and B do not provide sufficient additional support to infer—that Mangum was depicted in any of the pictures, much less in possession of the firearms shown in the pictures. Thus, the photographs and affidavits established, at most, that pictures depicting firearms of unknown origin had appeared in content posted to an Instagram account that Detective Jecklin believed was operated by Mangum, a known felon who was known to carry firearms.

While the nexus may "be established through reasonable, common-sense inferences from circumstantial evidence[,]" see Griffin, 2026 WL 2357208, at *5 (citing United States v. Grossman, 400 F.3d 212, 217-18 (4th Cir. 2005)); "[a]t some point an inference becomes, in Fourth Amendment terms, an improbable leap[,]" Lyles, 910 F.3d at 795. A review of the record suggests that such an improbable leap was taken when issuing Search Warrants A and B. The affidavits in support of Search Warrants A and B contained no information identifying the firearms, establishing the ownership of the firearms, or explaining whether there was any reason to believe that the firearms in the pictures were in fact possessed by the operator of the Instagram account.[3]

[3] There are many ways the affidavits could have provided additional supporting information that may have been sufficient to establish the nexus between Mangum and the firearm. For example, had the affidavits established that the interior of the vehicle shown in the picture posted on December 31, 2025, at 9:58 P.M., matched the description of a vehicle known to be owned by Mangum,

In short, the affidavits in support of Search Warrants A and B prompted the issuing judge to infer not merely that Mangum operated the account, but that Mangum was the person who possessed the firearms depicted in the pictures posted to the bleedem.tg4x account and that evidence of that possession would be found in the account's electronic or location data. Ultimately, the affidavits did not provide sufficient facts to support those inferences.

"[S]ocial media warrants can support invaluable police work," but "they also provide significant potential for abuse." United States v. Zelaya-Veliz, 94 F.4th 321, 342 (4th Cir. 2024). "When criminal offenders use social media to organize their enterprises and evade detection, it would seem unreasonable to disable law enforcement from using those same media to apprehend and prosecute them." Id. at 342-43. "But at the same time, there comes a point when the Fourth Amendment must emphatically yell STOP, lest we render obsolete the hallowed notion of a secure enclave for personal affairs." Id. at 343. Here, the Court finds that point has been reached. For the reasons set forth above, the affidavits supporting Search Warrants A and B did not provide a substantial basis for finding probable cause that a search of either the electronic data or the real-time location data associated with the

that may have provided sufficient circumstantial evidence to support the common-sense inference that Mangum was in his vehicle with the firearm depicted in the picture. ECF No. 13-1 at 6. However, no such connection was drawn here.

bleedem.tg4x Instagram account would uncover evidence that Mangum was a felon in unlawful possession of a firearm, in violation of Virginia Code § 18.2-308.2. Accordingly, the Court finds that Search Warrants A and B were not supported by probable cause, in violation of the Fourth Amendment.

**B. Good Faith Exception – Search Warrants A and B**

"Evidence obtained in violation of the Fourth Amendment, of course, is generally subject to suppression under the exclusionary rule." United States v. Perez, 393 F.3d 457, 460 (4th Cir. 2004). The overarching purpose of the exclusionary rule is "to deter future unlawful police conduct[,]" Calandra, 414 U.S. at 347; however, "the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." Id. at 348. The Supreme Court's opinion in United States v. Leon, 468 U.S. 897, "teaches that a court should not suppress the fruits of a search conducted under the authority of a warrant, even a 'subsequently invalidated' warrant, unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002) (quoting Leon, 468 U.S. at 922 n.23). "The [Supreme] Court explained in Leon that the deterrence purpose of the exclusionary rule is not achieved through the suppression of evidence obtained by 'an officer acting with objective good faith' within the scope of a search warrant issued

by a magistrate." Perez, 393 F.3d at 461 (quoting Leon, 468 U.S. at 920) (emphasis added).

"Usually, searches conducted 'pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search.'" Perez, 393 F.3d at 461 (quoting Leon, 468 U.S. at 922). "Leon, however, identifies four circumstances in which an officer's reliance on a warrant would not qualify as 'objectively reasonable': (1) when the issuing judge 'was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth'; (2) when 'the issuing magistrate wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 99 S. Ct. 2319, 60 L.Ed.2d 920 (1979)'; (3) when 'an affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'; or (4) when 'a warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.'" Perez, 393 F.3d at 461 (quoting Leon, 468 U.S. at 923). "In any of these four circumstances, then, the Leon good faith exception does not apply." Perez, 393 F.3d at 461.

The Government argues that, even if the Court finds that the warrants were not supported by probable cause, suppression is inappropriate because the "good-faith exception" to the exclusionary rule applies. ECF No. 14 at 20. In response, Mangum, relying upon the third circumstance identified by Leon (that the supporting affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[,]" Leon, 468 U.S. at 923), contends that "[a]n objectively reasonable well-trained police officer in Detective Jecklin's position would have known there was insufficient probable cause for Search Warrants A and B." ECF No. 15 at 12.

Here, the affidavits in support of Search Warrants A and B were not so lacking in indicia of probable cause as to render Detective Jecklin's official belief in the existence of probable cause entirely unreasonable. As discussed above, Detective Jecklin stated in the affidavits that she believed Mangum operated the bleedem.tg4x account. ECF No. 13-1 at 6. Detective Jecklin had communicated with the bleedem.tg4x account through direct messages, the account had sent her a phone number that she determined was registered to one of Mangum's relatives, and the account frequently posted photographs of Mangum. ECF No. 13-1 at 6. The affidavit also contained information about past use of the bleedem.tg4x account, including the three pictures portraying firearms described above, that were posted on the bleedem.tg4x

account via the Instagram "story" feature. ECF Nos. 13 at 2; 13-1 at 6-8. Detective Jecklin also stated that she knew that Mangum was a convicted felon, that Mangum was known to carry a firearm, and that Mangum's possession of a firearm would be in violation of Virginia Code § 18.2-308.2, which makes it unlawful for any person who has been convicted of a felony to possess any firearm. ECF No. 13-1 at 6-8.

While the information contained within the affidavits did not establish probable cause for the reasons explained above, that does not mean that the affidavits were devoid of indicia of probable cause. To the contrary, the affidavits presented an identified suspect, an account that Detective Jecklin believed the suspect operated, the suspect's status as a convicted felon, information that the suspect was known to carry firearms, and multiple pictures depicting firearms that had been posted to the account in question. Taken together, these circumstances provided at least some basis for Detective Jecklin to believe that evidence of unlawful firearm possession might be found in the electronic data and real-time location data associated with the bleedem.tg4x Instagram account.

Accordingly, this is not a case in which the affidavits were so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Rather, the affidavits in support of Search Warrants A and B presented a close

legal question concerning whether the information contained within the affidavits established a sufficient nexus between Mangum and the firearms depicted in the pictures. That question was resolved incorrectly when the warrants were issued, but the existence of that error does not, standing alone, render Detective Jecklin's reliance on Search Warrants A and B objectively unreasonable.

Therefore, the Court finds that the third Leon exception does not apply. Detective Jecklin acted with objective good faith in reasonable reliance on Search Warrants A and B. Accordingly, Defendant's Motion to Suppress will be denied as to all evidence obtained from the execution of Search Warrants A and B.

**C. Probable Cause – Search Warrant C**

Having denied the Motion to Suppress as to evidence obtained from the execution of Search Warrants A and B, the Court need not exclude from consideration the information obtained from the execution of Search Warrants A and B when evaluating the adequacy of the affidavit in support of Search Warrant C. See United States v. DeQuasie, 373 F.3d 509, 520 (4th Cir. 2004). The Court has considered the affidavit in support of Search Warrant C, which provided much of the same background information included in the affidavits for Search Warrants A and B as well as new information Detective Jecklin had obtained from the execution of Search Warrants A and B and her continued investigation into Mangum. ECF No. 13-3 at 3-11. Upon review, the Court finds that the issuing

judge had a substantial basis for finding probable cause that a search of the Lakeview Avenue Address would uncover evidence that Mangum was a felon in unlawful possession of a firearm, in violation of Virginia Code § 18.2-308.2.

Mangum raises two arguments in an attempt to establish that "the affidavit for the Lakeview Avenue address . . . lacked probable cause, and the resulting evidence found as a result of the execution of that search warrant must be suppressed." ECF No. 13 at 15. These arguments are without merit.

First, he argues that there is no evidence specifying who took the three pictures depicting firearms, when the three pictures were taken, or even who might have originally posted the three pictures to the bleedem.tg4x Instagram account. ECF No. 13 at 15. In turn, he asserts that this lack of specificity "undercuts any semblance of probable cause supporting the search warrant for the Lakeview Avenue address." ECF No. 13 at 16. However, while this Court has already addressed the shortcomings associated with the three posted pictures of firearms, Mangum's argument ignores the additional information contained within the affidavit in support of Search Warrant C that would suggest Mangum is in unlawful possession of a firearm.

As relevant here, the affidavit in support of Search Warrant C set forth that Search Warrant A returned an email address registered to the bleedem.tg4x account, which Detective Jecklin

believed to belong to Mangum, and a date of birth associated with the bleedem.tg4x account that matched Mangum's date of birth. ECF No. 13-3 at 9. This additional circumstantial evidence would further support the common-sense inference that Mangum is the owner and operator of the bleedem.tg4x account. Additionally, Detective Jecklin reviewed messages sent by the operator of the bleedem.tg4x account, whom Detective Jecklin believed to be Mangum, to three different Instagram accounts in an attempt to advertise and sell a rifle. ECF No. 13-3 at 9. The operator also sent each account a picture of said rifle. ECF No. 13-3 at 9. This would support the common-sense inference that Mangum, a known felon, was in unlawful possession of a firearm that he was attempting to sell. In turn, a sufficient nexus was established between Mangum and unlawful possession of firearms to support Search Warrant C.

Second, Mangum contends that the affidavit in support of Search Warrant C does not establish a sufficient nexus between the Lakeview Avenue Address, Mangum, and any suspected firearm to establish that evidence of a violation of Virginia Code § 18.2-308.2 (Possession of a Firearm by a Convicted Felon) would be found at the Lakeview Avenue address. ECF No. 13 at 16-19. However, a review of the affidavit in support of Search Warrant C reveals that the affidavit contained considerable information connecting the Lakeview Avenue Address, Mangum, and suspected firearms.

As relevant here, the affidavit in support of Search Warrant C set forth that Detective Jecklin, utilizing the real-time location data pings associated with the bleedem.tg4x account made available to her through the return from Search Warrant B, observed several pings at the Lakeview Avenue address early in the morning and late at night. ECF No. 13-3 at 7-8. Additionally, on January 16, 2026, Detective Jecklin observed a picture posted to the bleedem.tg4x account depicting the Lakeview Avenue address as associated with the "Home" icon on the car's GPS screen. ECF No. 13-3 at 7-8. Detective Jecklin further stated that she knew Mangum's child's mother lives at the Lakeview Avenue address. ECF No. 13-3 at 8. On January 21, 2026, Detective Jecklin conducted in-person surveillance at the Lakeview Avenue address and, at 8:45 A.M., observed Mangum exiting the Lakeview Avenue residence and entering a vehicle that appeared to be an Uber before the vehicle drove away from the Lakeview Avenue address. ECF No. 13-3 at 9. Detective Jecklin was able to observe the real-time location pings obtained from Instagram, which updated the location after Mangum left the Lakeview Avenue residence. ECF No. 13-3 at 9. Relying on the information above, as set forth in the affidavit in support of Search Warrant C, Detective Jecklin stated her belief that the Lakeview Avenue address was Mangum's residence and that Mangum stayed there at night. ECF No. 13-3 at 8. All this information, as set forth in the affidavit in support of Search Warrant C, provided

substantial information to support the common-sense inference that Mangum stayed at the Lakeview Avenue Address.

Additionally, Detective Jecklin set forth in the affidavit in support of Search Warrant C the following:

> (1) that she reviewed messages sent by the operator of the bleedem.tg4x account, whom she believed to be Mangum, to three different Instagram accounts in an attempt to advertise and sell a rifle, ECF No. 13-3 at 9; (2) that the operator also sent each account a picture of said rifle, ECF No. 13-3 at 9; (3) that she knows that Mangum is a convicted felon, ECF No. 13-3 at 5; and (4) that she "knows that people who are illegally possessing firearms often keep them inside vehicles and houses to store them" and "that it is common that people who are illegally possessing firearms will often try to conceal them from Law enforcement in these locations[,]" ECF No. 13-3 at 11.

Of course, "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." United States v. Servance, 394 F.3d 222, 230 (4th Cir.), vacated on other grounds, 544 U.S. 1047 (2005) (internal quotation marks omitted). And the issuing judge would be well within her discretion to rely on Officer Jecklin's assertion of knowledge, based on her training and experience, that it is common for people who are illegally possessing firearms to keep those firearms inside vehicles and houses to store them in order to try and conceal the firearms from Law enforcement. United States v. Williams, 548 F.3d 311, 318-20 (4th Cir. 2008).

All this information supports the common-sense inferences that Mangum was in possession of the firearm that he appears to be attempting to sell via his Instagram account; that his possession of a firearm would be in violation of Virginia Code § 18.2-308.2 (Possession of a Firearm by a Convicted Felon); and that there is a fair probability that Mangum is storing the firearm at the Lakeview Avenue address, where he appears to reside based on the location data and Detective Jecklin's in-person surveillance. In turn, the Court finds that the issuing judge had a substantial basis for concluding that there was a fair probability that evidence of a violation of Virginia Code § 18.2-308.2 would be found through a search of the Lakeview Avenue address. In turn, Search Warrant C was supported by probable cause. Therefore, Defendant's Motion to Suppress will be denied as to all evidence obtained from the execution of Search Warrant C.

## IV. CONCLUSION

For the reasons set forth above, the Motion to Suppress (ECF No. 13) will be denied by forthcoming order.

/s/ REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: September 3, 2026